on the docket will be United States v. Fernandez-Barron, 18-1250. Good morning. My name is Ty Gee. Today we're here on a case concerning a 3C1.1 enhancement for perjury. Under the Dunigan Supreme Court case, perjury requires proof that the false And the first question for the sentencing judge was to determine what was the substantial or the material matter. And Judge Moore determined that there were two. With regard to the BMW, Judge Moore determined that the false testimony regarding the BMW was an attempt to separate Mr. Fernandez-Barron from the Lucero load that was one of the load drivers, Mr. Lucero. With regard to the Impala, Judge Moore determined that the false testimony was an attempt to separate Mr. Fernandez-Barron from the Lucero load that was one of the load drivers, Mr. Lucero. It weakened the connection with the Kansas City load. Yes. The connection with the Kansas City load, that was with Martha Mota. That was the Impala issue. That's right. That's right. And I think the main point of this appeal is to focus on the evidence that the government had that incriminated Mr. Fernandez-Barron on any of the substantive drug counts or on count one, the conspiracy count. And with regard to the Kansas City load, that's one of the situations where we think that the evidence was exceedingly weak. That's why it was exceedingly important. Well actually, I saw that point made by the government that the weaker their case is, the more important becomes the false testimony. And I would disagree with that point, Your Honor. You can look at the government's case in a false testimony case in two ways. One is that there is overwhelming evidence of guilt and then false testimony by the defendant. Now that was the case in Dunnigan, wasn't it? There were six witnesses who testified against Ms. Dunnigan, and she testified contrary to all of them. In fact, that was the case in the United States v. Monks, the case that the government cited. Overwhelming testimony and then contrary testimony by the defendant, determined to be false by the sentencing court. Now that's one kind of situation. Another situation, the one that you just referenced, where the government's evidence is exceedingly weak and the defendant provides false testimony. Now in that situation, you could have a situation, just as the government suggests and just as the false testimony is exceedingly important. But this simply begs the question of what was the material matter? What was the material issue that Dunnigan is referring to? And in this case... Well, the material issue here was whether this guy was involved in the conspiracy. That's right. Okay, now he's trying to say, not me. I don't know anything about that in power. Right, and maybe a different way to look at this, Judge Kelly, is to... What would have happened? Well, you're not coming after the evidence. You're not saying there's insufficient evidence for the conviction. That's right. I'm not saying that. Okay. I do want to address... Stay closer to the microphone. I'm sorry. I do want to address your point, Judge Kelly, about the importance of the false testimony. And what I was going to suggest to you as a useful exercise is, what if Mr. Fernandez-Bron had never taken the witness stand, and we look at the government's weak evidence, the evidence of Ms. Mota testifying that, number one, I guess that was an impala that I saw. And I think there were two people whom I met in Kansas City. And at one time, yes, this is a picture of that man. But then when facing Mr. Fernandez-Bron at trial, no, he's not the person I met in Kansas City. Right? And the exercise that I'm asking that the court participate in is, what would happen if Mr. Fernandez-Bron had never testified? He probably wouldn't have been convicted. Well, that's the question. If you have what the government itself admits is evidence from Ms. Mota that is at best ambivalent, and the government has to carry its proof beyond a reasonable doubt, could it show that Mr. Fernandez-Bron was participating in a conspiracy in September, October of 2014 based solely on Ms. Mota's testimony? I think not. And so what I'm getting at is when the government's evidence is weak, the lies don't make any difference then. I don't think it does. I think what we focus on is what is the material issue on which the false testimony bore. And in this case, if you have weak testimony to begin with that never got the government to the point of beyond a reasonable doubt, the false testimony is irrelevant. It does not substantially affect the outcome of the case. Well, it certainly does because if, assuming he had never testified and you had made your motion, you would have been acquitted. And because the jury takes into consideration all of the facts, credibility of the witnesses, he testified, he lied, he got caught, and that's the way it goes. Yes, I don't mean to argue with you. Yeah, I don't follow your point that, well, if it was a weak case and he hadn't testified, he wouldn't have gotten the enhancement. He probably wouldn't have been convicted if it was such a weak case. So you're caught between a rock and a hard place there, Counsel. Well, he did get convicted. I'm not saying... I know he got convicted. That's why we're here. I think we're sailing past each other, Judge Kelly. I'm not saying that there wasn't evidence to convict Mr. Fernandez-Berron of counts one and four, the conspiracy and the substantive second newfound load. What I'm saying is that with regard to the material issue that we are discussing, which is when did he join the conspiracy? Now, the suggestion of the introducing the Martha Mota Kansas City transaction is to suggest that Mr. Fernandez-Berron had entered the conspiracy by September, October of 2014, but that never was... There was no evidence of that. That was weak evidence. That was tepid evidence. Now, the evidence became stronger, and this is the basis on which Mr. Fernandez-Berron was convicted, was that he got on the witness stand, and even though no one could put him in the white Toyota Camry, he himself in his own testimony said, I drove the Toyota Camry, which was a load car. That was what caused him to be convicted, but we're talking about false testimony as to when he entered the conspiracy. The government says he entered the conspiracy earlier than late March of 2015, and how are they arguing this? They're arguing this because they say, first of all, there's BMW evidence. This is the evidence that he was trying to sell the car to Mr. Lozano in May of 2014, and the only evidence that the government expert, who is some kind of soothsayer who can say that that BMW evidence was actually a text message about a load coming into the city of Denver, it's the simplest analysis. What he does, the expert witness, is he looks at the text messages and the dates on which the text messages come in, and then he looks at when the load cars come in, and he correlates the two. That's it. If there is a correlation in May 2014 about a BMW, the expert witness then opines that this BMW message is sent and received at the same time that a load car comes in, therefore BMW must refer to a load coming in. One argument to judge Moore made an unreasonable factual argument, but that's not your argument. I think I may have either misheard you, or you might have misspoken in your first minute of your 15 minutes, because I thought you had said, Mr. Gee, and tell me if I'm wrong, that the BMW was regarded as material by Judge Moore because it tended to distance him from the BMW. What Judge Moore said... I think, yes, slightly. I think so, or I misspoke. So in Volume 3, page 1655, what Judge Moore says is that the false testimony relating to the BMW was an attempt to distance himself, Mr. Fernandez Barone, from the load that came in at the time of the BMW text message. Right, because of the expert testimony that you just identified, which was the crux of the government's evidence with regard to the materiality of the BMW. And so let's assume, arguendo, that you're not arguing that it's factual determination, but that Moore was inaccurate. The expert witnesses, I recall, testified that the May 30, 2014 email, as you just pointed out to Judge Kelly, was in essence using BMW as the code word, and that based on what he said, the explanation was completely accurate, was that the expert witness corresponded all of the text messages and said, well, there was a load on or about May 30, 2014, and so this was when he referred to a BMW, it was really referring to BMW as a code for cocaine. And so the expert then, I think on cross-examination, acknowledges that, well, if there was an actual transaction that Mr. Fernandez-Barron had at about that time with the BMW, that would cast a big question on my testimony. And then, lo and behold, Mr. Fernandez-Barron, after that, testifies, yeah, I actually was selling the BMW, I did have a BMW, and that was a sale. Well, how can that be immaterial, because it directly pertains to the very subject matter of the soft spot that the expert witness had acknowledged in cross-examination? Yes, the reason why it's not material is because what you identified, Judge Baccarat, was a soft dirt spot. I'm saying that the entire testimony of the expert witness was a soft spot for the government. What I'm saying is that if Mr. Fernandez-Barron had said not a word about the BMW, that evidence about the BMW and the load, by the way, the substantive load is not a charged offense. The purpose of the BMW testimony was to try to persuade the jury that Mr. Fernandez-Barron had entered the conspiracy by May of 2014. And we're not talking about relevant conduct, and we're talking about under 3C1.1, we're talking about whether or not he committed perjury. We're not talking about whether or not he should have been convicted of a conspiracy or when he entered a conspiracy. Frankly, he committed perjury with regard to an event that preceded his entry into a conspiracy. Yes, I agree. But what I'm talking about, Judge Baccarat, are the Dunigan factors. And the Dunigan factor on a 3C1.1 enhancement requires that Judge Moore find evidence on a material issue that substantially affected the outcome of the case. And what I'm suggesting to the court, what I'm urging the court to conclude is that no, it did not have a substantial outcome on the case. It couldn't have because the evidence of Mr. Fernandez-Barron's entering the conspiracy in May of 2014 was so weak, so weak in fact, that Judge Moore himself at the sentencing hearing said, after reviewing all the evidence, having sat through the entire trial, having observed all the demeanor of the witnesses, I still find by preponderance of the evidence he did not enter the conspiracy. Even though I believe that Mr. Fernandez-Barron lied about the BMW and he lied about the Impala, I'm still going to find by preponderance of the evidence that he did not enter the conspiracy until March of 2015, almost a year after the BMW testimony or the evidence relating to the BMW. So that's my point is that I don't have any problem with Mr. Fernandez-Barron being convicted based on his testimony that I drove a white Camry in March of 2015. I have a problem with Judge Moore having found by preponderance of the evidence at the conclusion of the case at sentencing, having looked at everyone's testimony that he did not enter the conspiracy before that time, even though I know he lied. Judge Moore is still saying that he didn't enter the conspiracy until March of 2015. If he's willing to say that, then he must have concluded that it did not substantially affect the outcome of the case, and yet imposes the two-level enhancement for perjury. And my yellow light did not go on, but I have one second left. If you win on the Impala and lose on the BMW, is the error harmless? I'm sorry, could you repeat that? If you win on the Impala and lose on the BMW, or hypothetically you win on the BMW and lose on the Impala, is the error on the other vehicle harmless? I would say it is not harmless because I would say that when Judge Moore is considering the sentence, the specific number of months to impose based on that two-level enhancement, I would think that it would make a difference to Judge Moore whether you lied once or you lied twice. And I would suggest that none of the false testimony met the Dunnegan factors. It doesn't change the guideline calculation, though, does it? So if you win on one and lose on the other, the guideline calculation stays the same. That's right. There would still be a two-level enhancement. And so if that happened and the sentence was within the guideline range, wouldn't you then still have a presumptively reasonable sentence? I would say that there was an error in making a perjury finding and that to whatever extent, and we don't know, and I don't think this court could know, how much it would have affected Judge Moore. It seems like a remand to allow Judge Moore to consider the Tenth Circuit's conclusion about his perjury finding, that's something that he should reconsider. OK. Thank you. Because we went over time, let's give an extra minute and a half to the affiliate. Thank you. Want to vote on that? Want to vote on that? I'm not used to being given extra time as the government, so. Good morning. May it please the court, Carl Schock representing the United States. I'd like to start with this last point that you were addressing and just clear that up. We only need one of these two in order to support the enhancement. We know that, first of all, because the guideline wouldn't change, but also because Judge Moore at page 1648 of the record actually said to the government, you actually only need one of these false statements, don't you? And so we know that if the court were to find that, for example, the Impala was not material, but the BMW was, the enhancement would still apply, the guideline calculation would still be the same, and the sentence would be the same. And we have not only Judge Moore's statement on that point in the record at 1648, we also have the Anderson case that I cited in my brief, where the court actually held exactly that, where there were three or four false statements the court found, and this court found that one of those was an error and found the error harmless. But both of these statements here were material, because if believed, they tended to distance the defendant from the conspiracy by refuting the evidence that the government was presenting against him and by making his denials of involvement more plausible. Willful, whether the statement on the Impala was willful? The district court made a factual finding that it was willful, and I acknowledge there could have been different ways to interpret that testimony. Because in the first 30 seconds of the testimony, he says, yeah, it was registered under my name, but it was used by this other guy. And so you point out, well, on cross-examination, he acknowledged that the registration was under his name. Well, it wasn't exactly a remarkable concession elicited on cross-examination, because it was elicited by his own counsel in the first 30 seconds or so. I mean, it was the first four lines of the testimony. Correct. What he said is, it's in my name, but somebody else is the owner. But then the government presented evidence specifically on the ownership issue, however ownership is interpreted. However he interpreted ownership, he signed at least three different documents swearing under the penalty of perjury, I am the owner. So even if he interpreted owner to mean something else, the government presented that evidence that showed him swearing in a different context, that he was in fact the owner. And so that at least, at a minimum, gets enough evidence for the district court's finding that his statements that he was not the owner were, as the district court said, fanciful, unmitigated nonsense. And so the district court clearly made that credibility determination. With respect to the BMW, I think Judge Bachrach, you hit it directly on head, which is the government expert got up there and testified. Whatever the defense now thinks of that testimony, the testimony was that this was code for a drug load. And he specifically said, but if there is an actual BMW transaction, my opinion changes. Which essentially meant there was no connection. If there was a BMW transaction, there was no connection to this May 30th load. And the defendant gets up there and he says, there was a BMW transaction, which essentially eliminates whatever incriminating nature of this text that there was up to that point. Essentially without the testimony, the text message was a piece of evidence directly linking him to that May 30th load. So with the testimony, the message was simply an innocent text about it. So that itself would have a tendency to affect the issue under determination. With respect to the Impala, I think the materiality of that testimony is most clear with respect to the Kansas City load, which is we have a witness at trial who testifies that the two men who picked up the drug delivery in Kansas City drove a gray four-door car that looked like an Impala. And then her testimony with regard to identification was inconclusive. She said, in looking at a photo of the defendant from that time, said, that looks exactly like the man who was there. Then at trial, she's unable to identify him. So the jury is left with how to resolve this conflicting testimony. If in fact he owned the car, or owned a car that matched the description of the car that was seen in Kansas City, that would certainly be another piece of evidence that would play into this analysis. It was an off week, wasn't it? I mean, wouldn't she ask, like, what kind of car was it? I don't know. Will, do you have any idea? Well, I guess it was like a police car. The kind of police that you drive. I mean, would that be the extent of it? And then, so that becomes a central piece in saying that he committed perjury. Because he actually owned an Impala. Police often drive Impalas. Yeah. So first of all, she did also say that it looked like an Impala. Yeah. She did say that it looked like an Impala. I guess. Wasn't that it? I guess an Impala. Yeah. And so I'm not here arguing that this evidence was extremely strong, that he was at that September delivery, or that he was involved in the May 2014 drug delivery. In fact, perhaps that's why he was not charged with those as substantive counts. But the question here is whether it would have any tendency to affect the issue under determination. And certainly, if we're in a situation where he may or may not have been there, she identifies him, then she doesn't identify him, the fact that he owns a car that matches the car that was there would be a factor that the jury could consider in considering whether he was involved. And putting all of these pieces together, there were several other instances that the government tried to draw in. In June, there was another set of text messages. What all of these were is they weren't extremely strong. They were circumstantial evidence. And what he was able to do through his false testimony was chip away at the government's evidence. First of all, the May 2014 load, to try to pull that one out. Okay, well now there's no evidence that I was there. The September 2014 load, he was able to pull out the extra piece of evidence linking him there and say, well now there's no evidence there. Pull out those two, well now he says, well what's left isn't very much. And so ultimately, he was successful, at least as the government, or at least as the district court, interpreted the jury verdict in convincing the jury that he wasn't involved until later on in the conspiracy. And so the evidence wasn't extremely strong. But that's why what he was saying was so material, because if he could defeat these minor pieces of evidence, there was nothing left. I do also just want to emphasize on what the standard is here. The standard here, as set forth in 3C1.1, is whether, if believed, the testimony would tend to affect or influence the issue under determination. So there's some, the standard that the opposing counsel was citing here was substantially affecting the outcome. And I just want to point out, that comes from the Dunnigan case, where the Supreme Court's actually citing what the district court's findings were. So I think in terms of what the standard is, it's would it tend to affect or influence the issue under determination. It doesn't need to be dispositive, it just needs to affect that issue. Is materiality a question of law or fact, or a mixed question of law and fact? It is a mixed question of law and fact, but it's one that this court should review for clear error. And this court has stated that it reviews a district court's finding of perjury under 3C1.1 for clear error. I think the case I cite in my brief is not a perjury case, but there are 3C1.1 perjury cases. Well, doesn't it matter which element of perjury or 3C1.1 you're talking about? For example, willfulness is obviously an innately factual issue, whether, you know, materiality, at least in other contexts, is often considered a question of law. I would agree that willfulness and falsity are more obvious, and obviously materiality is something a little bit different. But I would say that materiality is also, should be treated as, it is a mixed question of law and fact, but it should be subjected to the clear error standard. And I think the best analogy to this is what the court does with the materiality element of perjury as part of a criminal offense, which is, it's a question for the jury, it's reviewed by this court only for sufficiency of the evidence, whether a reasonable juror could find materiality. And I think the analogous standard in this context, where this court is reviewing a sentencing court's finding, is clear error, whether there's any evidence in the record by which a district court could reach that finding. And I would also note that there are, although this court hasn't specifically addressed what materiality or what the standard of review for materiality is, the First, the Fourth, and the Sixth Circuits have all specifically held that the question of materiality under 3C1.1 is a factual determination reviewed only for clear error. So I think it is clear error, however, I also don't think that that's determinative here, because even if this court were to review it under de novo or some kind of mixed deference standard, the record here clearly shows that these are material. Is it harder for you to say that his statement is material if your own case is exceedingly weak? I mean, not taking on Mr. G's argument for him, but in that case, I mean, if you've got a really strong case, it seems to me that if he comes up and perjures himself, it may be easier to say it affected the outcome. But if you've got a really weak case, maybe the jury didn't even need to consider the perjurious testimony in coming to the conclusion that your case was no good to begin with. So it's not material. Perhaps I could see that argument if the evidence was so weak that, for example, it was insufficient to support a conviction. So I could see if you were so low that the government otherwise did not have any evidence that could support a conviction, perhaps there could be a situation where a false statement would be not material. Although, again, I go back to the standard of it doesn't have to change the decision, it has to affect the issue under determination. So even in that case, I'm not sure I would go that far. But what we have here, particularly with the BMW text, is we have this text, and although there wasn't a lot there, without the defendant's explanation, the only explanation that was given for that text was that it was about a drug load. So yes, the expert didn't go through a lot of technical analysis to get there, but it's not as if he just said it. There was a clear connection between this being sent the day of a drug load with him saying that this is the kind of thing that drug dealers or that conspirators will use as code. So there was enough evidence here, so I don't think we're in that situation. So you don't think Mr. G's general theory is spurious, you just think in the context of this case, it doesn't get him there. I wouldn't say it is spurious. I would say, I'm not sure I agree with it. It may be a bad term. But I wouldn't agree with it. I don't think because it simply has to affect the issue, but I would say that here it's even easier because to the extent that would apply, it would be in a situation where the evidence was so weak that there is no possibility of the issue being resolved in the government's favor. And here, I think, particularly with that BMW text, we have at least enough that it's not a situation where the jury would have necessarily completely ignored it. But I think you do agree that just as a general matter, his theory, depending on the facts of a case, could be meritorious. I understand that point, and I think it is a reasonable point in a different case. I'm just working through in my head. It sort of seems like there's a little bit of a sliding scale that goes on here. As your case gets stronger, the possibility that these lies would be material might go down. As the case gets stronger. Right. So that's also true. I think if the evidence was so strong, I mean, if there was 100 pieces of evidence saying that he was part of that May 30th, 2014 load, then perhaps in that case, if you have one false statement getting rid of one of those 100 pieces of evidence, perhaps in that case it becomes less material the stronger the evidence gets. So I could see it both ways, and that's why we should look at it here with under the facts here. Would it have a tendency to affect the issue under determination? And for the reasons that I've stated, I think that it would. The court has no further questions. The government requests that the defendant's sentence be affirmed. We took up a lot of Mr. Gee's time, so I'm going to give you 30 seconds. I only wanted to point out one thing to the court. The government keeps relying on application note 6 of 3C1.1 where the commission defines quote material evidence. I asked the court to compare application note 6 with application note 4 and with Dunnegan. If the court looks at those three items, it will see that application note 6 only defines material evidence, not material issue, not material matter. Material issue and material matter are the terms used in the perjury context. Material evidence in application note 6 refers to the use of material in application note 4 where it talks about various ways in which you can commit obstruction of justice other than perjury. If you look at application note 4's reference to perjury, it does not use the term material element. That's the only point I wanted to make. Thank you very much, Mr. Gee. This matter is submitted. Thank you. Both sides did an excellent job in your briefing and in your argument. We'll take this under submission in the next case.